MARY M. WATTS, Appellant, v. ELNORA L. HART et al., Appellees.

WILLS: Construction—Deducting Obligation from Share. Directions in a will to deduct from a devisee's share, under named conditions, a specified obligation which testator was then owing to devisee, may not be applied to another and different obligation owing by testator to devisee, even though the latter was executed and delivered at the time of the surrender of the former.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

SEPTEMBER 21, 1918.

ACTION to construe the provisions of a will, and for a decree partitioning property of an intestate among the devisees of a will. Opinion states the facts.—*Reversed.*

*Redmond & Stewart,* for appellant.

*William Smyth, Barnes, Chamberlain & Hanzlik, Robert M. Rogers, Charles Penningroth,* and *Tourtellot & Donnelly,* for appellees.

GAYNOR, J.—Jacob A. Hart resided in Cedar Rapids, Iowa, and had a wife and three daughters. All of these daughters at some time married, and bore the names, Mary M. Watts, Elnora L. Huttig, and Francis V. Myers. At the time the will hereinafter referred to was executed, Mary M. Watts was a widow. Elnora was dead, but left surviving her two sons, Ewart Hart Huttig and Frederick J. Huttig. Francis was also dead, but left surviving her two children, Hart Myers and Willard Myers. Jacob owned considerable real estate and other property; and, on the 10th day of March, 1900, executed a will, in which he devised to his wife, Elnora, all his estate, both real and personal, to have and receive all the profit, income, and advantages that may result therefrom during her lifetime, the same to be taken and accepted by her in lieu of all dower in his estate. The remainder was disposed of as follows:

"One third to my daughter, Mary M. Watts [plaintiff in this suit], provided, however, if me or my estate have to pay a certain promissory note for $2,000 given by me to my said daughter, Mary M. Watts, then the amount so paid on said note to be taken and deducted from the said one third of my estate.

"2d. The residue and remainder of my said estate, I give, devise and bequeath to Ewart Hart Huttig and Frederick J. Huttig, children of my late daughter, Elnora L. Huttig, and to Hart Myers and Willard Myers, children of my late daughter, Francis V. Myers, to be divided between my said four grandchildren equally share and share alike."

Jacob A. Hart died on the 26th day of May, 1900. His will was duly admitted to probate. Elnora, the widow, was appointed executrix of this will. It seems that much of the estate of Jacob A. Hart was not productive of income; so it was stipulated and agreed between the devisees and Elnora, the widow, that the real estate should all be sold, and the proceeds deposited in trust, the income arising there-

from to be paid to Elnora L. Hart, the widow, for her support and maintenance during her life, as provided in the will, and upon her death, the balance to be distributed, in accordance with the terms of the will, to the legatees named in the will. Subsequently, the widow died, and the estate is now for distribution among the legatees named in the will.

It is the claim of the plaintiff that she is entitled to receive one third of the estate, without reference to the $2,000 note referred to in that provision of the will under which she claims. It is her claim that the $2,000 note was neither paid to her by Jacob A. Hart during his lifetime, nor by his estate since his death; that, therefore, she is entitled to the one third of the estate provided in the will. This is the only question involved in this case.

The facts disclosed by the record are that, some time before the making of the will, Mary A. Watts, the plaintiff, was married. Her husband died. Upon his death, she received $2,000 insurance. She loaned this to her father, Jacob. He gave her the promissory note referred to in the will. Just when these things happened, does not appear. They happened, however, some time prior to the making of the will. A few days before Jacob's death,—in fact, he was then very sick and about to die,—he called the plaintiff, Mrs. Watts, to him, and asked her if she had that $2,000 note which he had given her. Her testimony is:

"The note, the $2,000 note, was my husband's insurance money. My father borrowed it from me and gave me his note. Just before he died, he asked me to give him that note, which I did. Then he handed me this other note."

This note appears in the record to be a note for $1,018.61, payable one year after date, and dated May 1, 1900. Jacob died May 26, 1900. She further testifies:

"This new note was handed to me and the old note surrendered a few days before his death. I had no idea

what the note was. I did not say anything about it, as he was on his deathbed. I thought it was the same $2,000 note I handed him. When he called me in, he demanded it, or asked me to get it. When I brought the $2,000 note to him, he took it and kept it. He had always kept track of my business. I let him have some money. I don't know what he intended that new note for. He handed it to me. He took the $2,000 note from me. I gave it to him. That was the time he handed me the other note."

This $2,000 note apparently was never returned by Jacob to his daughter, Mary, nor does the record show that she had ever had it in her possession after that time.

After the death of Jacob, the plaintiff (Mary) filed this $1,018.61 note as a claim against his estate. It was allowed and paid. At the time it was paid, she received on it the sum of $1,533.87. The court found that this sum, with interest from the date it was paid to Mary Watts, should be taken out of her share of the estate, under the provisions of the will hereinbefore referred to. From this part of the decree, plaintiff, Mary M. Watts, appeals.

The theory, evidently, upon which the court proceeded, in charging this sum up against the share devised, is, we take it, that the one-third interest in the estate given to her should be diminished to the extent of what his estate was required to pay to her upon the $2,000 note referred to; that this payment so made was a payment made upon that $2,000 note; and that, therefore, by the terms of the will, the interest in the estate bequeathed to her under the will should be reduced to the extent of that payment. That Mary M. Watts, the plaintiff, loaned her father $2,000, and that he gave her his note as evidence of the obligation on his part to repay the money to her, is not questioned. That he was indebted to her at the time the will was made, this record leaves no doubt. Why he sought to discharge his obligation to her in this way is not apparent in this record. If

the matter had stood as it was at the time the will was executed, and subsequently he had paid her this $2,000, on her request, then the will, strictly enforced, would reduce her share in the estate to the extent of the amount so paid, to wit, the $2,000. Or, had the matter stood as it was at the time the will was executed, and she had filed this $2,000 claim against the estate, and it had been paid by his administrator, then, under a strict construction of the will, the amount bequeathed to her would be reduced to the extent of such payment. But if, after the will had been executed, and before his death, he had demanded a return of this note to him, and she had surrendered it to him, then clearly, she would be entitled to her one third, undiminished. He did demand the note, and it was surrendered by her. If nothing further appeared, her share would not be undiminished by the provisions of the will. However, at the time he demanded of her this $2,000 note, and she surrendered the same to him, he gave to her this note for $1,018.61. This note imports a consideration. What the consideration was, does not appear. She testifies that she did not know what the note was for; that her father always kept track of her business; that she let him have some money. The purpose of this transaction, as it existed in the mind of the testator, is left to inference. The fact that she had this $2,000 note would not, in and of itself, diminish the one third bequeathed to her by her father. The provision of the will is that the one third bequeathed to her should be diminished only in the event, as he phrased it, "if me or my estate have to pay the note." Did he pay this note? She surrendered the note to him on his request. He took it and retained it. It is true that, at the same time, he handed her this other note, which she subsequently filed as a claim against his estate, and it was paid. Why this transaction? Wherein were her rights in his property changed at all, by this transaction, from what they were?

Her one third could only be diminished to the extent of the money actually received from the estate. His intention, expressed in the will, was that it should be diminished to the extent of the amount collected by her on the $2,000 note. If she collected on the $2,000 note, she would have the amount collected, and the balance of her share diminished by that amount. If she, did not collect, she took the one third undiminished. If he intended the same conditions to exist with reference to the $1,018.61 note, and she filed it as a claim against the estate and collected it, she would have the amount given her under the provision of the will, diminished only by the amount that she thus received. If she collected under the first note, she would have more money, but less of the proceeds of the bequest. If she collected under the second note, she would have less money, and more of the proceeds from the bequest. Wherein would her condition be changed? He evidently intended to do something. He evidently intended to change, in some way, her relationship to the estate. He took the old note, referred to in his will, and destroyed it or disposed of it, or, at least, retained it. He gave her a new note, without informing her of his purpose. At that time, he was about to die. He died soon afterwards. He had already received $2,000 of her money. He was paying her back $1,018.61 of that sum. It seems to be a case of deathbed repentance. Though repentant, he seems not to have measured up to his full duty, or it may be that he conceived that he or his estate should pay at least a portion of the $2,000. When he executed this last note, it was an absolute and unconditional promise to pay to her, within one year, the amount provided for in the note. If appellees' contention be true, Jacob did a useless thing. She had a note, which she could collect only from the share given to her in her father's estate. He gave her a note which she could collect only from the share given to her in her father's estate. Rational men do not do idle things.

When he executed this new note, he either meant, by so doing, to make himself or his estate liable for the amount provided for in that note, without regard to the provisions of the will, or he did a useless and idle thing. We cannot so construe it. This conclusion we draw from the facts disclosed in this record. She ought not to be charged with the amount received by her from the estate on this $1,018.61 note filed by her as a claim against the estate. The cause is reversed.—*Reversed and remanded*, with instructions to enter a decree in accordance with this opinion.

PRESTON, C. J., WEAVER and STEVENS, JJ., concur.